In the Matter of the Judicial Settlement of the Accounts of ELIZA-
BETH McCOLLUM and WILLIAM T. RODGERS, as Executors, etc., of
DANIEL McCOLLUM, Deceased.

ANNIE MONAHAN, Appellant; ELIZABETH McCOLLUM and WILLIAM
T. RODGERS, as Executors, etc., of DANIEL McCOLLUM, Deceased,
Respondents.

*Right of the executor of a deceased partner to continue the partnership business —
express authority by will is necessary — oral request is insufficient — when the
profits thereof go to the life beneficiary.*

In the absence of authority expressed in the will of a deceased partner, his execu-
tors have no authority to continue the partnership business except for the pur-
pose of converting the assets into money. An oral request made by the testa-
tor in his lifetime that the partnership business should be continued after his
death does not confer such authority.

Where the will of a deceased partner bequeaths to his widow the "use, rents,
interest and income" of the *corpus* of his estate, and the executors, whose
power of investment was not restricted, wrongfully allowed the *corpus* of the
fund to remain in the partnership business with the result that a considerable
sum is realized as profit thereon, such profit is income which passes to the
widow and is not an increase in the *corpus* which passes to the remaindermen.

APPEAL by Annie Monahan, one of the legatees under the last
will and testament of Daniel McCollum, deceased, from so much of
a decree of the Surrogate's Court of the county of Kings, entered
in said Surrogate's Court on the 14th day of June, 1902, as over-
rules the objections and exceptions made by the said Annie Mona-
han to the account of Elizabeth McCollum and William T. Rodgers,
as executors, etc., of Daniel McCollum, deceased, and to the report
of the referee appointed in the proceeding.

*John F. Carew* and *Thomas F. Magner*, for the appellant.

*Albert G. McDonald*, for the respondents.

JENKS, J.:

I think that the decree of the learned surrogate of Kings county should be affirmed.

The rule is that in the absence of authority expressed in the will, the death of a partner works the end of his trade, and, therefore, these executors had no authority to continue the business except for the purpose of converting the assets into money. ( *Willis* v. *Sharp*, 113 N. Y. 586, and authorities cited.) The oral request of the testator, made in his lifetime, was, of course, outside of the will, and did not confer such authority. ( *Willis* v. *Sharp, supra.* ) Nor can the continuance of the fund in the business be held to be merely incidental to the winding up of the business, in the face of the testimony of the executor that he left the capital in the business in accord with the said request, and because larger returns were probable.

The objection made by the residuary legatee is that the continuance of the business was *ultra vires* the executors, but incidentally such continuance is ratified by her so far as the return from such continuance is sought by the legatee. The proposition is that the *ultra vires* acts in continuance made the earnings of the *corpus* an increase of the *corpus*, and the practical result of such contention, if it prevail, is that by the omission of the executors the life tenant, contrary to the scheme of the testator, loses the sole provision made by him for her benefit, while the residuary legatee receives that which it was never intended she should receive. Thus the omission of the executors thwarts the intent of their testator.

There is no restriction in the will to investments in specified securities, upon which to base an argument that the testator intended to limit her income. On the other hand, it seems clear that the testator intended that his widow should receive, during her life, the entire benefit of the usufruct of the *corpus*, in that he could not have employed terms more comprehensive than " use, rents, interest and income." Of the word "income" alone, JESSEL, M. R., in *Ex parte Huggins* (21 Ch. Div. 85, 92) said : It "is as large a word as can be used." It does not appear that the amount received by the executors and paid to the life tenant constituted an increase of the *corpus*, but rather that it was the earnings of the capital invested. I think that the essential character of the $20,000 should not be

changed from income to increase because the executors continued the *corpus* contrary to their obligations. The rules which regulate the dealings of executors with a fund are not to be applied to defeat the scheme of the testator to the suffering of a beneficiary under that fund, for it has been held that such rules have reference to the administration, and are not available to defeat beneficial rights. (*Matter of Stanfield*, 135 N. Y. 292, 295.) Whether the income of the *corpus* was at the rate of one per cent or of twenty per cent did not affect the interest of the residuary legatee as defined by the will, for that was limited to the *corpus* after the death of the widow. So long, then, as the fund is intact and secure, the interest of the legatee is under the will fully preserved. While she should be heard as to all matters which might jeopardize the fund, she should not be permitted to use the omissions of the executors to defeat the interest of the life tenant. Further, Elizabeth McCollum, legatee of the income, and Elizabeth McCollum, an executrix, are two different and distinct identities, in the eye of the law.

I am of opinion that the life tenant is entitled to all of the income accruing from the date of the testator's death. (*Matter of Slocum*, 60 App. Div. 438; affd., 169 N. Y. 153.)

BARTLETT, WOODWARD and HIRSCHBERG, JJ., concurred.

Decree of the Surrogate's Court of Kings county affirmed, with costs.