In the Matter of the Judicial Settlement of the Account of MARGA-RETHE C. MARX, as Executrix, etc., of FREDERICK MARX, Deceased.

MARGARETHE C. MARX, Individually and as Executrix, etc., of FREDERICK MARX, Deceased, Appellant; KATHERINE MAUER and Others, Respondents.

Second Department, March 22, 1907.

Will construed — direction that executrix continue partnership business — proper division of income therefrom — estoppel by legatees assenting to division — when executrix should not be charged with payment of tax recoverable from government.

A testator directed his executrix to continue the business of a partnership of which the testator was a member, and " subject to the provisions relative to my co-partnership business " directed the executrix to sell the residue of the estate on such terms as she deemed best and to receive the proceeds thereof and the

proceeds and income from the partnership business which he bequeathed; one-third to his wife absolutely, one-third in trust, net income to the wife for life with remainder over to other relatives, the remaining one-third to go to the testator's relatives. There being no residuum of the estate above the copartnership business, the executrix divided the income and receipts from the partnership under the terms of the will aforesaid.

On the issue as to whether the income from the partnership should be treated as part of the principal fund of the estate and was to be divided in the same manner,

*Held*, that such construction should be given;

That in any event adult legatees who had consented to and shared in such division of the estate for five years were estopped from asserting a different basis of division;

That although the executrix had paid a Federal tax not properly chargeable to the estate and which was recoverable from the government, she should not be charged personally with the amount.

MILLER and JENKS, JJ., dissented in part, with opinion.

APPEAL by Margarethe C. Marx, individually and as executrix, etc., of Frederick Marx, deceased, from a decree of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 15th day of February, 1906, judicially settling her accounts as executrix, etc., of Frederick Marx, deceased.

*Louis Marshall* [*Albert W. Venino* with him on the brief], for the appellant.

*Robert D. Benedict*, for the respondents.

HOOKER, J.:

Consideration of this appeal requires the construction of the 5th paragraph of the will of the deceased. He died on the 24th day of November, 1901, after having been a member of the firm of Marx & Rawolle for upwards of thirty-one years. On May 19, 1900, Marx & Rawolle entered into an agreement to continue their copartnership for a further term of five years, and by that agreement an elaborate scheme was provided whereby the partnership should not cease upon the death of either or both partners during that five-year period, but should be continued in the event of the death of one partner by his executors or personal representatives, and might be so continued in the case of the death of both partners, in the discretion of the executors of both. By his will, the executors of Marx were given full power to continue the business, and were, by

the 2d paragraph of the will, specifically directed to carry out the provisions of the partnership agreement, so far as the same might be legally done.

After making certain bequests of household property and personal belongings in the 4th paragraph of his will, the testator provided in the 5th paragraph thereof as follows: "Subject to the provisions relative to my copartnership business of Marx & Rawolle, I direct my executors hereinabove named, or such of them as shall qualify, to sell all the rest, residue and remainder of my estate, both real and personal, at public or private sale, on such terms as they shall deem best, and I hereby give them full power to grant and convey the same and to receive the proceeds thereof and also the proceeds of my said copartnership business when wound up and the net income thereof, and I give and bequeath the same as follows:" (1) to his wife, the appellant, one-third absolutely; (2) to his executors in trust, one-third, whose net income during her life should be paid to his wife, the remainder to go to certain of the relatives of the wife and the testator; and (3) the remaining one-third to go to certain of the testator's relatives. There was no residuum of the testator's estate, except the copartnership business of Marx & Rawolle. The executors kept the estate invested in that copartnership business until July 5, 1905, when it was sold, and brought $283,809.55. From the time of the testator's death to the date of the sale, the net profit of the investment of the testator in the copartnership business amounted to $125,639.39. This latter amount the executrix received from the firm in installments from time to time, and as she received these moneys they were distributed among the various beneficiaries named in the will and its codicil, in accordance with what she supposed to be their provisions; that is, of this net income she took for herself one-third absolutely; she took a second third as the life interest in a third of the testator's residuary estate, and the balance she divided among those of the testator's relatives who were mentioned in subdivision (o) of the 5th paragraph of the will and the codicil thereto.

The respondents maintain that because she has divided the income of the business in thirds, and distributed it as though it were income of the principal of the estate, the executrix has erred in her construction of the will. The provisions of the 5th paragraph are

not ambiguous and do not lack in clearness. The language is so plain that recourse should not be had to circumstances or collateral matters to determine the purpose of the testator. His intention is clearly defined in that paragraph. Divested of the phrases and clauses unnecessary to be read in construing the subject-matter, it provides a direction to his executors to sell his residuary estate, subject to the provision in carrying on the partnership business, and they are given power to grant and convey the same and to receive the proceeds thereof, and to receive the proceeds of the partnership business when wound up, *and the net income thereof;* that is, they are given power to receive the proceeds of the net income of the partnership business; and he gives and bequeaths as thereinafter provided, *the same,* that is, of course, the proceeds of the residuum, the proceeds of the copartnership business and the net income. This last item he directed should be distributed in the manner thereafter provided, which was the same method provided to govern the distribution of the proceeds of the partnership. It seems clear, therefore, that the net income from the partnership business was to be treated as part of the principal fund of the decedent's estate, and it was to be divided along with and in the same manner as the residuum and the proceeds of the partnership business. This construction would give to the widow (1) an absolute third in all three funds, and (2) the income during her life of the residuum, the proceeds of the estate when wound up and the net income thereof, that is, she is entitled to the income of a third of the net income of the copartnership business.

Such is, in our opinion, the true construction of the will, for the meaning of the 5th paragraph is plain and unambiguous, and the infants should receive that portion of the estate to which they are entitled under this construction. The legatees who were infants at the time of the testator's death and who have attained their majority since then, may or may not have ratified a practical construction theretofore placed upon the will contrary to the view we adopt of the testator's intent; as to that the record is silent. But as to the adults they seem now to have been estopped from asserting that the construction placed for the past five years upon this will by the executrix and by themselves is the true one. So far as the record shows a substantial portion of the estate has been actually distrib-

uted and received by most, if not all, of the adult legatees prior to the filing of the final account and in conformity with the construction given to the will by the executors. They are, therefore, estopped from asserting a different basis of distribution. (*Chipman* v. *Montgomery*, 63 N. Y. 221, 234, 235.)

The executrix has paid a tax of $633.54 to the Federal government, which it now seems was not a proper charge against the estate It seems to be admitted by counsel for both sides of this controversy that the sum paid may be recovered back under the law as interpreted in *Tilghman* v. *Eidman* (131 Fed. Rep. 651). While we might consider the direction of the learned surrogate that this amount be surcharged equivalent to a direction that the executrix should seek to recover this amount back and that such course should be pursued, we are of opinion that the surrogate erred in charging this amount personally against the executrix.

The decree of the surrogate should, therefore, be reversed and the proceeding remanded to the Surrogate's Court for further consideration in accordance with the views here expressed, with one bill of costs payable out of the estate to the appellant and one bill to the respondents.

HIRSCHBERG, P. J., and RICH, J., concurred; MILLER, J., read for modification, with whom JENKS, J., concurred.

MILLER, J. (dissenting):

I agree with the conclusion that the surrogate erred in surcharging the account of the executrix with the amount of the Federal inheritance tax paid by her, but cannot assent to the proposition that the 5th clause of the will is too plain to admit of construction; disconnected from its context and literally construed with reference solely to its grammatical construction, it doubtless warrants the interpretation about to be adopted by this court; but I think the entire will, illumined by such circumstances as we have a right to consider, reveals the testator's purpose so clearly that it is our duty to give it effect in spite of inapt or inaccurate modes of expression. (*Phillips* v. *Davies*, 92 N. Y. 199.)

The residuary estate,—the subject of this controversy, consisted of the testator's interest in the assets of the firm composed of himself and Frederick Rawolle; shortly before making his will the testa-

tor and his said partner entered into new articles renewing the partnership for the definite term of five years from January 1, 1900, and by a supplemental agreement indorsed thereon, which we held applied to the entire articles (*Matter of Marx*, 106 App: Div. 212), the term was extended so as to expire January 1, 1906. It is plain that the primary purpose of said new articles ·was to provide for the continuance of the business in case of the death of one or both of the partners, for said articles contained explicit provisions to that end; and the apprehension of each was justified by the event, for the testator died November 24, 1901, and his said partner May 18, 1903. Said articles explicitly referred to the interest of each partner as *capital invested by him*, and provided that the *capital* should be kept unimpaired and that the *profits* or losses should be ascertained and divided on January first of each year in the manner stated. The testator was childless, and it is plain that the first object of his solicitude was his aged wife. We come now to the provisions of the will.

In the 1st clause the testator authorized his executors to make *investments* and *reinvestments*, "including the right to purchase and continue the business" theretofore conducted by him with said Rawolle; in the 2d clause he directed them to carry out said partnership agreement. The 3d and 4th clauses are not now material. In the 5th he disposed of his residuary estate. Omitting, for the present, consideration of the language requiring construction, the property which he had in mind was disposed of by four subdivisions, L, M, N and O, respectively, as follows: (L) One-third to his wife absolutely, (M) one-sixth to his executors in trust to pay the income to his wife during her life, remainder to her sisters and a brother, (N) one-sixth to his executors in trust to pay the income to his wife during her life, remainder to his own sisters and a brother, (O) the remaining third to his said sisters and brother. Said brother having died leaving a son, who had a son and six daughters, said testator added a codicil to his will, in which he stated it to be his "particular desire" to provide for the support, maintenance and education of his said grandnieces, and provided, among other things, that one-half of that portion of his estate which otherwise would have been paid to his said nephew should be invested and the income paid to said grandnieces until each attained the age of

twenty-one. It cannot be doubted that the testator intended that his aged wife and the grandnieces, for whose education he was solicitous, should have the immediate enjoyment of the provision for their benefit; he certainly did not intend to postpone such enjoyment until death had intervened in the one case, or the time for education had passed in the other, nor is it easy to suppose that in giving his wife the net income of a third he really intended to limit her to income on the net income of a third. I quote the language which is claimed to require that result:

"*Fifth.* Subject to the provisions relative to my copartnership business of Marx & Rawolle, I direct my executors hereinabove named, or such of them as shall qualify, to sell all the rest, residue and remainder of my estate, both real and personal, at public or private sale, on such terms as they shall deem best, and I hereby give them full power to grant and convey the same and to receive the proceeds thereof and also the proceeds of my said copartnership business when wound up and the net income thereof, and I give and bequeath the same as follows," etc.

It must not be overlooked that the residuary estate and the interest in the copartnership business were identical, that as evidenced both by the will and the partnership articles the testator considered said interest as an investment, which he directed his executors to continue, and he was not amiss in treating the continuance of the partnership business by the executors as an investment by them of his residuary estate, for so the courts have treated similar directions. (*Matter of McCollum,* 80 App. Div. 362; *Johnson* v. *Lawrence,* 95 N. Y. 154; *Bell* v. *Hepworth,* 134 id. 442, 448; *Columbia Watch Co.* v. *Hodenpyl,* 135 id. 430, 434; *Ferry* v. *Laible,* 31 N. J. Eq. 566, 579.) The will speaks from the death of the testator, and I think it plain from what has already been said that the testator intended to give his wife one-third of his residuary estate absolutely, and the use of another third, and that his purpose was not frustrated by the direction for the continuance of said business. The respondents do not argue that the income from said business was not to be withdrawn until the business was wound up; they concede that it was to be received annually as the partnership articles provided, but insist that when received said income was to be treated not as income, but as additions to the corpus of the estate, to be distributed and

invested accordingly; if they are right in this contention it cannot be doubted that the will provided for an unlawful accumulation of the income, of which the widow had the life use. (*Thorn* v. *de Breteuil*, 86 App. Div. 405; 179 N. Y. 64.) The only warrant for their contention is the assumption that the words "copartnership business" and "net income thereof" are the antecedents of the pronoun "same" following. I think said pronoun has the same antecedent as the preceding "same," to wit, "all the rest, residue and remainder of my estate;" that is what the testator clearly had in mind in making the provisions L, M, N and O, and the fact that the draughtsman made a bungling sentence by putting too many parenthetical expressions between the pronoun and its antecedent should not stand in the way of a clearly-expressed intention. The books are full of cases, which I need not cite, in which the courts have gleaned the intention of the testator from less apt language than that now being considered; but if sense is to yield to strict grammatical construction, and if the word "same" does refer to the "proceeds of my said copartnership business  *  *  *  and the net income thereof," then I think the expression is to be read distributively as the learned counsel for the appellant contends, and that the testator meant to dispose of said "proceeds" as *principal* and the "net income thereof" as *income* in the manner in which he subsequently directs the disposition of *principal* and *income*, income not to be invested but to be paid out as "income." In any view, the construction adopted by the executrix and long acquiesced in by the interested parties was correct.

JENKS, J., concurred.

Decree of the Surrogate's Court of Kings county reversed and proceedings remitted for further consideration in accordance with opinion of HOOKER, J., with one bill of costs to the appellant and one bill of costs to the respondents, payable from the fund.